Good morning. May it please the Court, my name is Ned Smock and I represent David Busby. I'd like to reserve three minutes for rebuttal. There are two main facts about this case that make it unique among child pornography cases. The first fact is that the charged images in this case came as part of a series of images that had been downloaded onto the computer as closed containers. Hundreds of images could come onto the computer in a single file, in a single mouse click, and the only thing the user would know about those images was the name that had been given to the file that contained those images. The second fact that makes this case unique is the fact that every single image that was charged in this case had been deleted. That's rare, and it's directly contradictory to the MO of child pornography possessors that typically are seen. That's directly contradictory in that the — Somebody has a reason to think that, uh-oh, they're going to look for something. I better get rid of it. That may be true, but the government's own witness testified that child pornography possessors rarely, if ever, delete images of child pornography because they view them as prized possessions. Except that if you think somebody's going to look, I mean, I don't think the government witness was saying, oh, but you think you're going to get caught, well, then, of course, they wouldn't delete it because they still want to keep it. No, in that case, and there's no way to tell when the deletion took place, it appears, so it does appear to be at least the case or the possibility that your client had time to delete, and hence, I'm not sure what we can infer from the fact that they were found in the unallocated space. Well, that goes directly into the statutory deletion of defense, Your Honor. And what I want to start by emphasizing about that is that the standard for instruction of a jury about a defense like that is generous. A defendant has a constitutional right to have the jury instructed according to his — If there's evidence that would support — That's absolutely right. And to be clear about that, it's even if the supporting evidence is weak, insufficient, inconsistent, or of doubtful credibility. What would the evidence need to show in order to support that instruction? Well, first of all, that the defendant possessed less than three matters. And second of all, that there was prompt deletion and that the deletion was in good faith. And we had certainly much more than weak, insufficient, and inconsistent evidence at that point. There was evidence of deletion, right? There was. Absolutely. Every single charged image had been deleted. And how many images were there? 1,400 is what the — A long way from three. Well, that's where I think the point that I started with about the nature of the files in this case is important. That 1,400 number, which the government continues to recite, would be much more compelling if this were a case in which there were evidence that Mr. Busbee sat at his computer,  downloaded them, and clicked on them 1,400 times. That's absolutely not the case here. And in fact, the testimony from the defense expert that was confirmed by the government's witness was that there's no — that these images could have come on the computer in a handful of mouse clicks at most over an unknown period of time. So — A handful was still probably more than three. Well, it's not clear. The evidence isn't clear about that. And that's why it's important to remember that there — it was — all of the evidence was in unallocated space, which means that there was no metadata to establish that. The defense expert testified that these files, RAR files, could contain thousands of images. There's no way to conclude whether or not this was one mouse click — How many RAR files were there? That's not — we don't know the answer to that question because there were no — And that's where I think we need to recall what we're asking here. The defense isn't asking this Court to determine that Mr. Busbee was entitled to an acquittal on that defense. What the — what this — what the defense is arguing is that under the generous standard that this circuit — But let's put in — getting past the number of files, which — okay, you — I think you've given as good an answer as you can. What about evidence on how quickly they were deleted and the good faith aspect of it? What — you need evidence of those two elements as well in order to get to an instruction, right? That's correct. So in order to establish that evidence, it was clear that the government repeatedly argued to the jury that Mr. Busbee had been seeking child pornography on the same day that the computers were seized. So — but there was no illegal content found on the computers. So if the government is correct that he was seeking child pornography on April 20th of 2010, he necessarily deleted it that very same day. So that, at a minimum, is weak, inconsistent evidence. It's much more than that. And that's why it's absolutely clear that the Court erred in refusing to instruct the jury. He could have had a bunch of files on his computer that he'd seen often, looked for some files on that day, and not found some, or found some, and then deleted everything, both the old and new stuff. That's possible. But again, that might be an argument that the government could have made to the jury. But that's not a basis to prevent Mr. Busbee from raising that defense. This is an affirmative defense, right? Correct. And who is the burden of producing evidence on that point? The defense would raise evidence about that, and it would be a preponderance of the evidence standard. If it's an affirmative defense, is it the defendant who has to present the evidence, or is it the government that has to present negative evidence that, once it's raised to the defendant, that those things are not true? Well, I think the instruction that we presented indicated that the jury was— I know what the instruction is. I'm asking a different question. The record is what the record is. And I'm just wondering, what is your position as to who had the burden? If somebody had the burden to produce evidence of good faith or absence of good faith, of immediate deletion or non-immediate deletion, was it the defendant's burden, or was that the government's burden to present a negative, to present— The case law in that is, and I think I mentioned this in my brief, that the defense can rely upon evidence presented in the government's case. So that's the evidence that I described, that the government suggested that he had looked at child pornography on that exact same day. I know that. That's a different rule. I'm talking about burden. There are certain affirmative defenses where, once the defendant raises the affirmative defense, the government actually has to come in and disprove it. I'm just wondering if this is one of those. I don't believe it is. But again, the question here is whether the defendant had a right to raise that defense. And certainly there was sufficient evidence. Your client didn't testify. Correct. But again— I'm asking a question. He did not testify. He did not. Okay. So he didn't present any evidence. He didn't present any other evidence of immediate deletion or anything like that. He didn't. But a key aspect of the government's case was its claim that Mr. Busby was looking for child pornography on the day that the computers— What about good faith? Assuming there is enough evidence to get the jury on immediate deletion. I'm not sure there is, but let's say there is. Good faith. What evidence is of good faith in the record unless your client gets on the stand and says—presents good faith? A couple things. One is that there is no evidence that Mr. Busby deleted this material in reaction to a belief that he was under suspicion by law enforcement. In addition to that— But there are lots of other possibilities. He might just have gotten tired of them. He said, well, you know, I've looked at these images many times. I'm deleting them. Just like people often go and delete things off their computers. You know, the hard drive is too full. My computer is sluggish. I'm going to delete a bunch of stuff. So that's not deleting in good faith. I'm just wondering, where is the evidence of good faith? It's not only what I mentioned before, but also if I can get into this issue about assurances on websites that the images therein were legal. That's other evidence of Mr. Busby's intent as he looked for images, that he was looking for images that were legal in nature. BTHC seems to me to put a dark shadow over any notion that he stumbled across things he thought were legal by accident somehow. There was absolutely no evidence anywhere on the computer, whether it was in allocated space or unallocated space, of any image that was consistent with the description of what a BTHC image would be. Was there evidence that he had searched for that? There was evidence of that search term being entered on one occasion. There was no evidence that any image had been downloaded as a result of that search whatsoever. Moving into the question of the assurances that our expert wished to testify on the website, this evidence was key to Mr. Busby's mens rea defense. The government, in its case in chief, introduced evidence suggesting that Mr. Busby had looked at websites that it suggested involved child pornography. And the government argued in its closing argument that this established Mr. Busby's intent. What the government didn't do was inform the jury of what those websites actually contained. The defense expert looked at what those websites looked like at the time that Mr. Busby allegedly visited them. And those websites had assurances on their splash page, the first page that one sees when one enters the URL. And they indicated that those images would be legal. And I want to be clear, and I think we made abundantly clear in the district court that our purpose in introducing that evidence was not for the fact that the images were, in fact, legal. It was for the effect on Mr. Busby, because, again, his mens rea was key. And the fact that these websites included assurances that the images would be legal was consistent with Mr. Busby's defense that he was seeking legal images. That's the reason that we cited Heischer in our 28J letter. This Court has made absolutely clear that the defense has a constitutional right to present evidence consistent with its defense. The district court was absolutely clear about its incorrect basis for keeping that evidence out. The district court again and again, despite the defense's arguments, indicated that this was hearsay being introduced for its truth. The government, interestingly, doesn't try to defend that conclusion here. What evidence was there that the defendant went to these websites, saw that message, and was induced by that to believe that he didn't have the mens rea, that he didn't seek something he wasn't supposed to get to? The evidence was that the government's own witness testified that the logs that he presented to the jury suggested that the user of the computer, Mr. Busby, entered the URL and saw the splash page. Our expert was prepared to testify that on that splash page prominently displayed were assurances that these images would be legal. That's certainly sufficient to make it relevant. It's certainly sufficient to make it something that the defense should have been allowed to present to the jury. Moving just quickly into one other thing that I'd like to raise is the prior conviction. This Court, it's absolutely clear that that prior conviction was admissible technically under Rule 414, but it also was subject to the restrictions under Rule 403. This Court in LeMay set forth a number of considerations for when one would admit a prior conviction, particularly in light of the fact that prior child sex convictions are extremely prejudicial in nature. The first factor is whether the prior conduct was similar to the charge conduct. The prior conduct in this case was significantly more inflammatory than the charge conduct. That weighs against it. The second thing is how close in time the prior acts were. This is a 1990 conviction for conduct that occurred in 1986, 24 years before the charge conduct in this case. The government doesn't cite a single case that allowed admission in a situation with such old prior convictions. The other point that the government makes about this is there's a need to, for this prior conduct evidence in light of the evidence that was introduced at trial. Well, in its opening statement, the defense conceded an interest in children by Mr. Busby. That wasn't something for which the prior conviction was necessary. It was overwhelmingly prejudicial for the jury to learn of it, and for that reason, in addition to the two others that I raised, this verdict, this conviction should be reversed. Thank you. We'll hear from the government. May it please the Court. Brian Lewis for the United States. David Busby received a fair trial, and this Court should affirm his conviction and his sentence. David Busby was not in custody. His statements, both of his statements to law enforcement officers, were voluntary. Why is it necessary to admit that prior conviction? Your Honor, that prior conviction was, it showed a strong nexus and a direct connection between the child pornography that Mr. Busby was alleged to have possessed and his interest, his sexual interest in children. And the language, strong connection and direct, strong nexus and direct connection comes from a second circuit case called Brand, which this circuit, sitting on Bonk and Curtin, endorsed. And that's the first reason, because it was relevant. And Mr. Schmock pointed out one fact that is, that makes this case unique, which is all the images were in unallocated space and hadn't been deleted, which meant that all of the metadata was no longer associated with it. And the defense expert testified that that was rare and almost never happened. And so this was helpful information. Did the district court go through a LeMay analysis under 403? Absolutely, Your Honor. Judge Armstrong conducted, she went through the LeMay factors and she conducted a 403 analysis, and she issued a written order explaining her analysis. And that's at CR 107. Importantly, Judge Armstrong, she admitted only the fact of Mr. Busby's prior conviction. No underlying details about the fact that it was a molestation of his stepdaughter. She required a limiting instruction that the government was only supposed to use it for intent, for absence of mistake, which again was here important because of the unallocated space situation. She also excluded other evidence that the government sought to introduce, which was the moral inventory file on David Busby's computer that said, I am a pedophile and I want to understand why. She excluded the sex offender registration forms. And the defense cites no similar case in which this circuit has reversed for abusive discretion where the district court has struck the careful balance. How old was the conviction that was it? The conviction was from 1990, Your Honor. The what, 20-some-odd years? It was remote in time in that sense. But this circuit has explained that there's no inflexible rule excluding prior bad acts after a certain amount of time elapses. And the circuit went on to say, depending on the theory of invisibility and similarity, some remote acts may be extremely probative. And that's from Spallone. Here, what brought this conviction into remarkable relevance was David Busby, his own words. Sergeant Reich and Detective Miller from the University of California Police Department came to interview him. He invited them into his home. He said to them, I'm expecting you. He didn't give them any resistance whatsoever, invited them into his home. And the first thing he says is, you know my background. I was arrested in the 90s. And so he's the one who makes his conviction the most relevant with his own words. And he goes on to say, the statement is important because he's lobbying them. That's why, it's another reason these statements are voluntary, because he has a motive to be there. In 1990, he got in trouble for his sexual interest in children. But in his words, LBL hung on to him. And he wants that same deal. And what he's saying is, look, in 1990, you hung on to me. And this is not as bad as that. Like, I'm getting rid of the porn. I've never touched another kid again. And so he's lobbying for the same thing. And so pornography to him is a different matter. Those are his words. That's what he says. And in order to understand what he's talking about when he says pornography is a different matter, that he's talking about child pornography, he's using, as a reference point, the conviction. And so in order for the government to put on what is a statement by a party opponent, we have to have that conviction in to explain it. And it's the context that allows us to explain he's talking about child pornography and the statement is incriminating. And in a closing argument, the defense argued that it wasn't context. It was conjecture. Once the jury hears about a prior conviction like this, in this kind of case, it's I think it's somewhat of a fallacy to suggest that the jury is going to put it out of its mind for all purposes except for the limited instruction which the judge gave him. And it's a really prejudicial piece of evidence. Well, Your Honor, Congress has said. Oh, I understand. Okay. And the Seventh Circuit has explained, and I think it's important. This is in Seabolt. And this, they say, and this is in the child pornography case where there was evidence of molestation put in. It looked to me like the government had a pretty strong case without this piece of evidence. I think we could have proven our case without it, Your Honor. But I think that the judge did an excellent job of conducting the LeMay analysis, of doing the 403 balancing, instructing that this was supposed to be limited for a use for a limited purpose. In fact, the government reinforced that limiting instruction in closing argument, and that's at SER 495. We also used it very sparingly in our opening and in our closing, mentioning it expressly only once in the opening and only twice in the closing. All you have to do is let the jury know. Your Honor, this is not a case where the government was seeking any unfair advantage or received an unfair advantage. In Seabolt, as I was going to say, explained that the molestations and the evidence supporting the statutory criminal elements were similar in character. And again, that's child pornography case. So there is no reason to suspect the jury was inflamed by the admission of the molestations. And I can tell you just from my experience in trying the case that the most compelling part of the trial was not reading a stipulation about Mr. Busbee's background, but having to go over the five series of child pornography images. And this is a distasteful crime. It just is what it is. That's what it is. And so if Your Honor believes that that kind of evidence just automatically taints it, even the charge would taint the jury. But we trust our juries more than that. And Judge Armstrong did a good job of instructing them. You can only use this for a limited purpose, and the government abided by that faithfully. Let's talk a little bit about the requested defense instruction on good faith. Yes. The standard is pretty loose, right? I'm sorry. On the Internet Archive or the affirmative defense instruction? So for the Internet Archive testimony, the proffered testimony that was offered by the defense or the? Instruction. The instruction. Your Honor, the defendant failed across the board to provide any evidence to support any of the elements that it was supposed to in order to get its affirmative defense. There was no evidence at all of good faith. They rely on the fact that all the images were deleted, but Flier said in this court, and I think it's instructive, the deletion proves very little. You can't sustain a conviction just on the fact of deletion. And similarly, it's not very informative about good faith. It just doesn't say one way or the other whether or not the images were deleted in bad faith or good faith. It doesn't advance the ball either way. Why isn't there something for the jury to decide? Your Honor, because there's a burden that the defense has to meet to get this, to get the affirmative defense instruction. And as soon as they push the ball a little bit, they can have the instruction, but they just didn't push the ball. All of the child pornography and erotica images, so those legal images that they talk about, they were in unallocated space together. Now, I think they could have gotten the instruction had there been a difference. If all of the child erotica images had been in the allocated space and had not been deleted, but all of the child pornography had been deleted in the unallocated space, I think there's an argument there to say, look, I drew a distinction. And the distinction I drew was like, these ones are bad. I tossed those. These ones are okay, so I keep those. But that's not where they were. So the evidence is actually that it's bad faith, not good faith. And the defense expert said if a user – I didn't follow that at all. Okay. Let me try it again. So here are all the images. All of the images related to children that were on the two offending computers were all in unallocated space. They had all been deleted. And at trial, and even now, the defense is asserting, look, he was seeking these images of children. And so if evidence consistent with that, which would assert some good faith, would be the images of – the legal images that are just of children, but not nude, but they're didn't tell you, lasciviously displayed, that would be in the allocated space, in the file structure, in David Busby's legal images of children. But it was – Well, it's not an extra good faith. I'm going to rid myself of all images of children. I'm not even going to take a chance on keeping anything that's illegal. And what's more, I'm trying to get over this attack. And I have the children. I'm going to delete everything. Why isn't that itself – you said they were all in one place. They were all in one place. If there was testimony of that – So that suggests it was deleted with a single click? No, it doesn't suggest that at all. Well, you mentioned it, so tell me what it suggests. You brought it up. I was trying to figure out what you were talking about. I did bring it up. My point is that those images were treated the same way, not necessarily at the same time. And so – Well, but you said they were together in an allocated space. That's right. So what is it about being together that is significant? What point were you trying to make there? The defense has argued that David Busby was seeking legal images of children, and he knew that those were legal, and he knew the difference, and that he wanted those, but he didn't want the illegal images. And so as soon as he saw the illegal images, he deleted them. But the legal images he kept. That's his stated defense. But that wasn't the state of the forensic evidence. The state of the forensic evidence is that everything had been deleted. And so he drew no distinction between legal images and illegal images because he looked at all of them and then deleted all of them because he wanted to hide all of them. So there's no evidence of good faith in the evidence as it existed. But I was trying to say – I'm still listening to my answer to my question, which you have managed not to give. What significance do you attribute to the fact, which you emphasized, that it was all in the unlocated space of all together there? That it's bad faith. Okay, explain to me how the fact that they're together. Indicates that it's bad faith? Yeah. It's one consistent with his statement. Well, let me say this. It's either consistent with that it's bad faith or it doesn't say anything at all. And this – I don't have the burden to show that this is not – that it's bad faith to deny the affirmative defense instruction. My point is, is that it's not evidence of good faith. They have to put on evidence of good faith, and they didn't. Would it be more evidence of good faith if it had been in separate places in the unallocated space? There's no such thing as separate places in the unallocated space. You mentioned it. You made the point of saying they're all together in unallocated space. You made the point of it. I'm trying to understand what point you were trying to make. Now, if you're saying now that you misspoke, that's fine. But I don't want to leave here wondering what on God's earth was he talking about. So let me ask the question just one more time, and tell me what you meant by saying what is the significance of the fact they were all together in unallocated space? The point is, is that it's proof of nothing, and it's not proof of good faith, Your Honor. Because all the images had been deleted. They're all in unallocated space. There's no metadata. But you mentioned that they were together. Yes. What significance do you attribute it? So I'm asking you, so if they had been in separate places in unallocated space, would your argument be different? And you say, no, you can't. There is no such thing. The distinction that I was trying to draw, Your Honor, is that some of the images could be in allocated space, and then some of the other images would be in unallocated space, not that they would have been in different places within one library. I see that all the images were deleted as opposed to some of the images. Right. So if he had not deleted the legal images, and he had deleted them. Isn't that the kind of thing you argue with the jury? I mean, he would say, look, the fact that I deleted them all shows good faith. I deleted everything. I didn't want to even take a small chance that I might keep something illegal. I'm done with this stuff. Look, I allocated it. And he would come back, and he would say, no, no, no. If you really wanted to show good faith, he would have carefully gone through the 1,400 images and separated the good ones from the bad ones. And then he'd come back and say, well, but to do that, I would actually have to view 1,400 images, some of which are illegal, and I didn't even want to, you know, soil my eyes with seeing them to make the distinction I just thought this is dangerous. This is what you would do. And then the jury would go out and decide. Isn't he just sort of undermined your case by saying, you know, really there is evidence of good faith there, that he deleted them all? Not in the least, Your Honor. And the fact that. A little bit. Just a tiny bit. Not in the least. And the fact that there are two competing narratives. Not in the least. The fact that there are two competing narratives, as Your Honor has said, indicates that that piece of evidence doesn't advance the ball either way. Now, there could be other evidence that could advance the ball either way, but that piece doesn't advance the ball either way, and it's up to the defense to put on evidence that advances the ball, and they didn't. And so there's also no evidence of. You need to go back and sit on some juries sometime. I often get struck, Your Honor, but I will try to. Really? I never get struck. I do. I keep trying. They say they don't want me. All more charming than me, Your Honor. I have no idea why. I keep hoping to get struck. They never strike me. Not in federal court, I must tell you. I've never been called to federal court. But go ahead. I do also want to say, Your Honors, that Mr. Busbee had well over two matters, and that's because the effective Child Pornography Prosecution Act expanded jurisdiction of child pornography law to cover child pornography that travels through the Internet. The only kind of matter that can travel through the Internet is a computer file. And since the computer file has to be that matter, then LACI can no longer be the law. Why don't you spend the next 18 seconds telling us about the disclaimer and why that was the website disclaimers? Oh, Your Honor, that was absolute hearsay, and it's because there was no evidence. This is not hearsay. It's clearly not hearsay. He was trying to admit it, not to prove that this was not pornography, but that his state of mind is saying, I believe that it wasn't pornography. He could only do that if he had proof that he had seen the images. And there were two witnesses that testified, who could have testified, that he had seen, I'm sorry, not the images, but the notices. And those witnesses were Scott Campbell and the defense expert. Scott Campbell testified that Bro, which is the network log, writes down everything. So all of the network traffic that comes in gets recorded by the log. And the defense didn't ask one single question about whether or not they saw there was a notice in the web stream or whether a picture, like notice.html or notice.jpd. They didn't ask one question. They did ask him, hey, do you know if these sites contain legal or illegal images? The defense expert could have testified that she had seen some evidence on his computer. So if it had come down onto his computer and if it had been saved, or even if it had been deleted, she could have testified, look, I saw this picture of a notice. She was competent to testify to that. They didn't ask her about that, not with relation to her evidence of the computer. So they had two witnesses. Scalia. I'm sorry. So this is not a hearsay defense. This is a defense of ---- Fisher. Well, so that makes it irrelevant. But the fact that so since he didn't see it and it couldn't be for the effect on the listener, then it's absolute hearsay because they're only seeking to admit it for the truth of the matter asserted. So ---- If I understand correctly, you're saying that there were ways that a witness could have testified based on an examination of the computer that, in fact, this screen with that message had been displayed. The testimony that was prepared or was proposed was based on the experts going to the archive for that website and saying the archive shows this warning, but there's still lax evidence that defendant ever saw that. That's exactly right, Your Honor. And the government was willing to stipulate ---- But the district court excluded on hearsay grounds. She did exclude on hearsay grounds because she didn't ---- frankly, she didn't believe that it was for the effect on the listener. She said in the back-and-forth at sidebar, if your client even saw it. So she ---- and she's right. If it's not for effect on the listener, then the testimony is hearsay because it's for the truth of the matter asserted. And that was the question that they asked Scott Campbell, not did you find any evidence in the log that a notice was seen, but do you know the content of these websites? That's why they were putting this evidence in, and Judge Armstrong called them on it, and she was right to call them on it. And she certainly didn't abuse her discretion. Okay. I think I understand your position. Thank you. Thank you, Your Honor. I think you have a little time for rebuttal. First, I'd just like to start on the good faith issue with respect to the defense. The government indicated that if Mr. Busbee had saved some images of child pornography in allocated space, that might have been evidence of good faith. He, in fact, had done that. If you look at supplemental excerpts of record 428 and 429, our expert testified that she found images of child modeling in the allocated space of his computer. That's an indication that he was making a differentiation between illegal and legal images. The second thing is that if you look at the number of supplemental excerpts of record 428 and 429, the second thing is if you look at the number of images, whether they were legal child erotica versus illegal child pornography, and you look at the numbers that were presented by the government at trial, it also provides further evidence of good faith on Mr. Busbee's part. With respect to one of the computers, the government's witness testified that there were 19,000 images that he referred to as pertaining to child pornography or relating to child pornography, but which he said were legal in nature. That's as compared to 700 images on that computer that were illegal. That's certainly more than enough evidence to get this instruction to the jury. With respect to the question of the notices, Mr. Campbell testified at page 59 and 60 of the excerpts of record that his logs showed that the user accessed the splash page of that website. There would be really, it would be extremely difficult for our expert to have found, if not impossible for our expert to have found, images of that website within the unallocated space on the computer, and that's what I want to stress to you. There were millions of images within the unallocated space, and it would have required digging through those images, and it's not even clear from our expert's testimony that she would have been able to find every single website that had been looked at. The fact that there was evidence that the splash page was looked at, the fact that that splash page included assurances was certainly enough to make it relevant. The government could have argued to the jury that there was reason to believe that he didn't see it, but that's not a basis to keep that evidence from the jury. That was an issue for the jury to decide, and failing to allow the jury to consider it is clear error. I'm referring to pages 59 and 60 of the excerpts of record, which appears to be testimony by Ms. Lors. What was the testimony that you're calling my attention to? I believe it was 59 and 60 of the excerpts of record. That's what I've got. Direct by you of Ms. Lors. It may be that I'm referring to the supplemental excerpts of record. I apologize. But what is it I should be looking for? Campbell testified that his view of the logs, which were complicated documents containing all sorts of code, was that it indicated to him that the computer user, Mr. Busby, had accessed the splash page of this website. In other words, had entered the URL and had seen what was on the first page of the website. And our expert was prepared to testify that that first page contained assurances that it was legal. That's directly relevant to our mens rea defense. And key, under Heischer, that's the type of error that requires reversal because it's preventing us from presenting to the jury key evidence that would have helped us to establish our defense. And I think on that ground, in addition to the others, reversal is required. Thank you. Okay.  Okay. Just argue we'll stand for a minute.
judges: Kozinski, Paez, Clifton